UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

      -against-                                  10 Cr. 194 (JGK)

MARK MILLER,

                Defendant.

------------------------------------------------------------x

SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT

BENNETT M. EPSTEIN
Attorney for Defendant MARK MILLER
100 Lafayette Street
New York, NY 10013
(212) 684-1230 (Office)
(917) 653-7116 (Mobile)

# EPSTEIN SACKS, PLLC
100 LAFAYETTE STREET
NEW YORK, NY 10013
(212) 684-1230

BENNETT M. EPSTEIN (Mobile) (917) 653-7116
SARAH M. SACKS (Mobile) (917) 566-6196

October 14, 2022

Hon. John G. Koeltl
United States District Judge
Southern District of New York
US Courthouse
500 Pearl Street
New York, NY 10007

Re: United States v. Mark Miller
10 Cr. 194 (JGK)

Via ECF and email to Koeltlnysdchambers@nysd.uscourts.gov

Dear Judge Koeltl:

    We represent Mark Miller, the defendant in this Violation of Supervised Release proceeding, pursuant to the Criminal Justice Act. This letter and some exhibits are respectfully submitted as a Sentencing Memo on his behalf.

    Mr. Miller has recently entered a plea of guilty to Violation Specification Number 2, which charges that he committed crime of Cocaine Trafficking, First Degree, in the State of Florida, on or about September 23, 2020. Mr. Miller had pleaded guilty to that crime in Florida in July 2021, and in his guilty plea allocution to the violation here he affirmed before Your Honor that he committed that crime, albeit one that in his view involved some form of what he referred to as "entrapment". This view no doubt stems from the fact that the Florida case was a "reverse sting", a circumstance that appears to have been a factor in the disposition of his case in Florida since the defendant faced a far greater sentence under the State statute to which he pleaded guilty, yet he was ultimately sentenced there to two years imprisonment after having already served nearly a year.

    Mr. Miller completed the Florida sentence (with appropriate jail time credit) in July 2022, after which he was taken into Federal custody on the violation warrant and presented in this District on August 2, 2022. He is now before the Court for sentencing on his plea to the violation of Supervised Release. Since the violation is denominated as "Grade A", he faces a

scope of is five years additional imprisonment, while the advisory guidelines are for a sentence of 24 to 30 months.

We respectfully believe a sentence well below the guidelines is appropriate on the grounds that Mr. Miller would probably not be before this Court for any violation but for a unique but not-too-tortured application of the saying that "no good deed goes unpunished", combined here with the effects of the Covid pandemic.

The following account is based upon my interviews with Mr. Miller and his uncle, Danilo Robinson, a retired US Army Master Sergeant living in Panama, who is familiar with most of the mitigating facts related below. The chronology is supported by court records, death certificates from Florida of Sgt. Robinson's brother and mother, i.e., the defendant's uncle and grandmother, respectively, Francisco Robinson and Grace Robinson and "open source" reporting concerning the closure of Panama borders and airports during the pandemic.  The overall story of Mr. Miller's re-entry into the U.S. after his deportation to Panama to care for his dying uncle and grandmother in Florida in their final days, his attempt to return to Panama and the futility thereof during the pandemic is corroborated by my telephone interviews with Master Sergeant Robinson, his emails to me, and the documents he provided.  Together, they support the following points:

1. <u>Mr. Miller did not re-enter the United States to traffic in drugs</u>.  Although his re-entry to the U.S. was not legal, it was for a noble purpose: providing compassionate, live-in care for his uncle, Francisco Robinson, age 64, who lived alone in in Palm Beach, FL and was in failing health from complications of severe diabetes.  Mr. Miller's grandmother, Grace Robinson, age 92, who was suffering from Alzheimer's, lived nearby in a senior residence, also in Palm Beach. Mr. Miller was close to both, having lived with his grandmother Grace and his uncle Francisco, who was the brother of his perennially absent father, during Mr. Miller's high school years in Colorado. After Mr. Miller completed his underlying federal prison sentence in this case on October 15, 2015, he was deported to Panama on December 21, 2015, where he eventually opened a business renting bikes and skates in the tourist areas.  In the ensuing years, by staying in touch with Francisco and Grace, he learned from the visiting nurse who was caring for his uncle that Francisco was going blind and could no longer drive himself to his twice-weekly dialysis treatments.  The nurse also told him that Francisco had injured himself in a fall and had undergone several dangerous mix-ups with his medications.  She said that he was ill to the point of needing constant care and companionship, which the "system" could not provide. Then, in late November 2019, some four years after Mr. Miller arrived back in Panama and had been living a trouble-free life, he received the dreaded telephone call from the nurse which advised him that someone should begin to arrange for Francisco's funeral. Shortly thereafter, Mr. Miller entered the United States through Mexico and made his way to Florida, where he tended to Francisco until he latter's death on February 5, 2020, a date which coincides almost exactly with the beginning of the Covid pandemic in the United States.  Mr. Miller drove Francisco to dialysis, cooked for him, showered him, managed his medications and, lastly, assembled family contributions for his burial.

      2. Mr. Miller did not remain in the United States to traffic in drugs. After Francisco's death in February, Mr. Miller spent some brief time living with his grandmother Grace, who also needed care and told him she wanted to return home to Panama with him, to spend her last days there. He began working in a car wash to earn money for their airfare, but in early March 2020 Panamanian authorities closed the borders of the country due to the pandemic and announced that the airport would be closed to international flights as of March 19, 2020. Mr. Miller attempted to get his grandmother and himself aboard one of the last "emergency" flights that were allowed to enter Panama, but there was no room for them. Meanwhile, Mr. Miller, as an outsider, was only allowed to stay as a visitor in Grace's senior residence for 45 days. He complied with those rules and then began sleeping in Francisco's car, while taking his meals and bathing at his grandmother's. Sometime in August 2020, Panama announced the phased re-opening of its airports (which finally re-opened in October 2020). This proved to be too late for Grace, who was by now in steep decline. She passed away on October 22, 2020, not long after Mr. Miller was caught up in the "reverse sting" set up by the Hialeah, FL, police department, which is the subject of his guilty pleas, there and here.

      2. Mr. Miller's conviction for trafficking in drugs was related to his effort to return to Panama. In September 2020, with few resources and needing money for the airfare to return to the now re-opened Panama with Grace, Mr. Miller called a friend in Panama seeking a $3000.00 loan to pay some final expenses and purchase plane tickets home to Panama for his grandmother and himself. Rather than loan him the money, the friend referred him to someone who would allow him to "earn" it quickly, but at the substantial risk of acting as a translator and messenger in a drug deal. This somewhat odd amount of money, 3,000 dollars, which is roughly consistent with airfare for two plus some expenses, also coincides with the amount Mr. Miller later explained to Florida police he would earn for bringing the book bag that they seized containing the amount of $36,000.00 to a parking lot in Hialeah to complete a purchase of a kilo of police-owned cocaine priced at $33,000.00. Like many "reverse" stings, this was the "small e" kind of "entrapment" which often turn out ensnaring poor and desperate people like Mr. Miller (*See, United States v. Lopez*, 415 F. Supp. 3d 422 (S.D.N.Y. 2019) (Rakoff, J.). Although the defendant had not been *en*trapped in Hialeah legally, we ask the Court to consider that the defendant had come to be more or less "trapped", under the ordinary use of that term, by the Covid pandemic and his own attempt to perform admirable acts of love for his dying uncle and grandmother.

      Sgt. Robinson's emails and the documents he provided are attached as exhibits.

                                        Very truly yours,

                                        *Bennett M. Epstein*

                                        Bennett M. Epstein