

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 19, 2022

**BY ECF, EMAIL and HAND DELIVERY**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:  *United States* v. *Mark Miller*, 10 Cr. 194 (JGK)

Dear Judge Koeltl:

The defendant in this violation of supervised release proceeding is scheduled to be sentenced on November 8, 2022 at 4:30 p.m.  For the reasons explained below, the Government submits that a sentence at the lower end of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 24 to 30 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.    Factual Background**

On September 22, 2010, Mark Miller pleaded guilty to conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  On January 14, 2013, Miller was sentenced to 80 months' imprisonment and five years' supervised release.

On or about October 31, 2015, Miller completed his sentence of imprisonment and was taken into custody by Immigration and Customs Enforcement.  On or about December 21, 2015, Miller was deported to Panama.

Subsequently, on or about September 23, 2020 – after having illegally reentered the United States – Miller was arrested in Florida under the alias "Mark Robinson," in connection with his purchase on or about that date of two kilograms of cocaine from a confidential informant and an undercover police detective.  He was charged with cocaine trafficking in the first degree, in violation of Florida Statutes Section 893.135(1)(b)(1)(c); money laundering in the second degree, in violation of Florida Statutes Section 896.101(5)(b); ownership, lease, rental, or possession for trafficking in or manufacturing a controlled substance, in violation of Florida Statutes Section 893.1351(2); unlawful use of a two-way communications device, in violation of Florida Statutes Section 934.215; and unauthorized possession of a driver license or identification card, in violation of Florida Statutes Section 322.212(1)(a).

On July 2, 2020, after having pled guilty to cocaine trafficking in the first degree, involving 400 grams or more but less than 150 kilograms of cocaine in violation of Florida Statutes Section 893.135(1)(b)(1)(c), Miller was sentenced to two years' imprisonment, with credit for the 283 days he had been detained prior to sentencing. This sentence was well below the otherwise-applicable 15-year mandatory minimum sentence, which was waived by the Florida state prosecutor.

Miller was released from state custody on June 8, 2022 and transferred into federal custody the same day in connection with the instant violation of supervised release proceedings.

On September 28, 2022, Miller admitted to Specification Two, relating to having committed the Florida state crime of cocaine trafficking in the first degree. The Probation Office seeks a sentence of five years' imprisonment but does not object to a sentence within the Guidelines range, with no term of supervision to follow because Miller will likely again be transferred to Immigration and Customs Enforcement to begin removal proceedings following his release from custody.

## II. Applicable Law and Analysis

The Court is required to revoke supervised release upon a finding that the defendant possessed a controlled substance. 18 U.S.C. § 3583(g)(1). When imposing a sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, and the applicable Guidelines range. *See* 18 U.S.C. §§ 3553(a); 3583(e). In assessing the appropriate sentence, "the primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

Here, because Specification Two involves the possession of a controlled substance, revocation of the defendant's supervised release is mandatory. Because the specification to which Miller admitted is a Grade A violation, the offense for which he was originally convicted is a Class A felony, and he was in Criminal History Category I when he was originally sentenced, the applicable Guidelines range is 24 to 30 months' imprisonment. *See* U.S.S.G. § 7B1.4(a). Because the offense for which the defendant was originally convicted is a Class A felony, by statute he may serve a term of imprisonment of up to 60 months.

The Government believes that a sentence at the lower end of the Guidelines Range is sufficient but not greater than necessary to serve the legitimate purposes of sentencing in this case.

First, as to the nature and circumstances of the offense, Miller's commission of a felony while on supervised release is a significant breach of the Court's trust that warrants a commensurately significant sanction. This is especially so because Miller committed this conduct

while he was present in the United States unlawfully, after having been deported. The Government acknowledges that, in his sentencing submission, Miller has presented the Court with mitigating circumstances surrounding his criminal conduct. However, these mitigating circumstances must be balanced against other circumstances that magnify Miller's breach of trust. ███████████████████████████████████████████████████████████████ Miller was sentenced to 80 months' imprisonment – considerably below the otherwise-applicable ten-year mandatory minimum term of imprisonment for a violation of 21 U.S.C. § 841(b)(1)(A). Miller's failure to abide by his supervised release conditions after the Court showed such leniency amplifies the extent to which his conduct is a breach of the Court's trust.

Moreover, the state crime committed by Miller in violation of the conditions of his supervised release – namely, cocaine trafficking – bears clear similarity to his original and very serious crime of conviction: conspiracy to distribute and possess with intent to distribute cocaine. That Miller was not deterred from engaging in further criminal conduct involving cocaine, even after serving his original sentence, highlights the need for the sentence here imposed to afford adequate deterrence and to protect the public from further crimes.

### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant at the lower end of the Guidelines Range.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: *AMessiter*
Alexandra S. Messiter
Assistant United States Attorney
(212) 637-2544

cc: Bennett Epstein, Esq. (by ECF)
    U.S. Probation Officer Joseph Perry (by email)